IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **AMANDA KAY KOEBER**, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 25 CV 3230 |
| | ) | |
| v. | ) | |
| | ) | |
| **LINDA McMAHON,** in her official capacity as Secretary of Education, **U.S. DEPARTMENT OF EDUCATION**, **SLOAN SERVICING**, and **NELNET, INC.**, | ) ) ) ) ) | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

1. This is an action under the **Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706**, seeking judicial review of a final agency action by the United States Department of Education ("the Department"), denying Plaintiff's application for discharge of her Federal Family Education Loan Program ("FFELP") loans on the basis of total and permanent disability.

2. Plaintiff applied for a Total and Permanent Disability ("TPD") discharge pursuant to 34 C.F.R. § 682.402(c) and submitted comprehensive evidence from the Social Security Administration ("SSA") establishing her disability and eligibility for discharge of her FFELP loans. Despite this, the Department arbitrarily and capriciously denied her application, failing to properly consider material evidence that supports her eligibility for discharge.

1

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the present action based on 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346(b) (federal defendant), 28 U.S.C. § 2201(a) (authority to issue declaratory judgment when jurisdiction already exists), and 5 U.S.C. § 702 (right to judicial review), as this action arises under federal law and seeks relief from final agency action.

4. Venue is proper in this district under 28 U.S.C. § 1391(e) because this is a civil action, Plaintiff resides in this district, and no real property is involved.

## PARTIES

5. Plaintiff, Amanda Kay Koeber ("Plaintiff"), is an individual who resides in Lincoln, Nebraska. Plaintiff is a borrower of FFELP loans and is permanently and totally disabled because she is unable to engage in any substantial gainful activity by reason of medically determinable physical and mental impairments that have lasted for a continuous period of not less than 60 months.

6. Defendant Linda McMahon ("Defendant McMahon") is the Secretary of Education and has ultimate authority over the Department. In that capacity and through her agents, Defendant McMahon has broad authority over the operation and enforcement of the Department, including the laws administering the federal student loan programs, and the TPD discharge application process under 34 C.F.R. § 682.402(c). Defendant McMahon is sued in her official capacity.

7. Defendant U.S. Department of Education ("the Department"), with respect to student loans, *inter alia*, administers the federal student loan programs, manages loan servicing,

oversees loan repayment forgiveness programs and loan consolidations, enforces compliance, protects borrowers, and provides education and counseling.

8. Defendant Sloan Servicing ("Sloan Servicing") is a student loan servicing company operating AS a Nebraska trade name for Nelnet, Inc. Sloan Servicing manages commercially held FFELP loans. It handles paperwork related to deferments, forbearance, repayment plans, enrollment status changes, discharge or forgiveness claims, and bankruptcy claims for borrowers with loan accounts beginning with "D" or "J."

9. Defendant Nelnet, Inc. ("Nelnet"), is a Nebraska corporation that, with respect to student loan services, services Direct and FFELP loans for the Department, originates and services private education and consumer loans, and provides backup servicing for FFELP loans, private education, and consumer loans.

## LEGAL FRAMEWORK

10. The FFELP, from which Plaintiff received her student loans, is governed by 34 C.F.R. § 682.100.

11. The regulations governing when a borrower's FFELP loans are eligible for discharge based upon total and permanent disability are found at 34 C.F.R. § 682.402(c)(1).

12. The total and permanent disability discharge eligibility requirements promulgated by the Department are found at 34 C.F.R. § 682.402(c)(2)(iv). Pursuant to those regulations, a borrower who is a recipient of Social Security disability benefits and who seeks discharge of the Borrower's FFELP loans must do the following:

> The borrower must submit to the Secretary an application for a total and permanent disability discharge on a form approved by the Secretary. The application must contain

(A) A certification by a physician, who is a doctor of medicine or osteopathy legally authorized to practice in a State, that the borrower is totally and permanently disabled as described in paragraph (1) of the definition of that term in § 682.200(b);

(B) A certification by a nurse practitioner or physician assistant licensed by a State, or a licensed or certified psychologist at the independent practice level, that the borrower is totally and permanently disabled as described in paragraph (1) of the definition of that term in § 682.200(b); or

(C) An SSA Benefit Planning Query (BPQY) or an SSA notice of award or other documentation deemed acceptable by the Secretary, indicating that—

(1) The borrower qualifies for Social Security Disability Insurance (SSDI) benefits or Supplemental Security Income (SSI) based on disability and the borrower's next continuing disability has been scheduled between 5 and 7 years;

(2) The borrower qualifies for SSDI benefits or SSI based on disability and the borrower's next continuing disability review has been scheduled at 3 years;

(3) The borrower has an established onset date for SSDI or SSI of at least 5 years prior or has been receiving SSDI benefits or SSI based on disability for at least 5 years prior to the application for a disability discharge;

  (4) The borrower qualifies for SSDI benefits or SSI based on a compassionate allowance; or

  (5) For a borrower who is currently receiving SSA retirement benefits, documentation that, prior to the borrower qualifying for SSA retirement benefits, the borrower met any of the requirements in paragraph (c)(2)(iv)(C) of this section.

13. Total and Permanent Disability (TPD), governed by 34 C.F.R. § 682.200, is defined as:

  Totally and permanently disabled. The condition of an individual who —

  (1) Is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that –

   (i) Can be expected to result in death;

   (ii) Has lasted for a continuous period of not less than 60 months; or

   (iii) Can be expected to last for a continuous period of not less than 60 months; or

  (2) Has been determined by the Secretary of Veterans Affairs to be unemployable due to a service-connected disability.

14. The Department's Discharge Application: Total and Permanent Disability Direct Loan Program / FFEL Program / Perkins Loan Programs, Section 4 Total and Permanent Disability, Paragraph 2, a copy of which is attached hereto, marked Exhibit A, specifically states as follows:

  Are you currently receiving SSDI or SSI benefits, or SSA retirement benefits, and does your most recent SSA notice of award, SSA Benefits Planning

Query (BPQY), or other documentation show that you meet **one of the requirements A through E listed below**.

    A. You qualify for SSDI or SSI based on disability, and your next scheduled disability review is between 5 and 7 years from the date of your last SSA disability determination;

    B. You qualify for SSDI or SSI based on disability and your next continuing disability review has been scheduled at 3 years;

    C. **You have an established onset date for SSDI or SSI of at least 5 years before the date of your application for TPD discharge, or you have been receiving SSDI or SSI based on disability for at least 5 years before the date of your application for TPD discharge**;

    D. You qualify for SSDI or SSI based on a compassionate allowance; or

    E. You are currently receiving SSA retirement benefits, and before you qualified for SSA retirement benefits, you met one of the requirements described in paragraphs A through D above.

(Emphasis added.)

## FACTUAL BACKGROUND

15. On March 13, 2007, May 29, 2007, September 13, 2007, October 5, 2007, and January 4, 2008, Plaintiff received disbursements of FFELP Stafford Unsubsidized and

6

Subsidized loans in the total amount of $12,925.00 to attend school at the College of Hair Design in Lincoln, Nebraska. After making payments on the loans from 2008 until approximately 2017, Plaintiff's current balance on these loans is $5,517.00, plus accumulating interest. Loan details as of September 28, 2025, from Plaintiff's account on the studentaid.gov website are attached hereto, marked Exhibit B.

16. On or about May 10, 2024, Plaintiff mailed to the Department an application for discharge of her FFELP loans based on total and permanent disability under 34 C.F.R. § 682.402(c), along with an Applicant Representative Designation: Total and Permanent Disability (TPD) completed by her Applicant Representative, Ms. Deanna Lubken ("Ms. Lubken").

17. As part of her application, Plaintiff submitted the following evidence from the SSA:

    a. A Notice of Award, dated May 22, 2018, indicating that Plaintiff had been determined to be disabled as of September 15, 2017; and

    b. A notice dated July 15, 2021, stating that the SSA had reviewed Plaintiff's medical condition and determined that she remained disabled and continued to be eligible for disability benefits.

18. Plaintiff's Discharge Application: Total and Permanent Disability, including the two SSA notices, are attached hereto, marked as Exhibit C.

19. Despite this evidence, on July 11, 2024, Nelnet Total and Permanent Disability Servicer, on behalf of the Department, issued a denial of Plaintiff's TPD application, asserting that:

    a. Plaintiff had not provided to Nelnet and/or the Department the required documentation from the SSA supporting her eligibility for TPD discharge and did

   not respond to Nelnet's and/or the Department's request to provide the documentation. However, neither Plaintiff nor her Applicant Representative was ever contacted by Nelnet or the Department requesting she submit additional documentation.

   b. Plaintiff did not provide a copy of her SSA notice of award for Social Security Disability Insurance ("SSDI") or Supplemental Security Income ("SSI") benefits stating that her next scheduled disability review will be no less than three years.

   A copy of the denial letter is attached hereto, marked as Exhibit D.

20. In October, 2024, Plaintiff was informed by her student loan servicer, Sloan Servicing, that her student loans had returned to payment status and that they were in default.

21. Pursuant to 34 C.F.R. § 682.402(c)(2)(vii):

   If the application is incomplete, the Secretary notifies the borrower of the missing information and requests the missing information from the borrower…. The Secretary does not make a determination of eligibility until the application is complete.

22. Based upon the above regulation, if the Department's denial was based upon missing information as alleged in Nelnet's denial letter, Plaintiff's application should not have been denied outright. Rather, the Department should have notified Plaintiff of what information it believed was absent and given her an opportunity to provide such missing information. In any event, Plaintiff's loans should not have been returned to repayment and default status until such notification was provided.

23. On November 25, 2024, Plaintiff's attorney sent a letter to the Department requesting a re-evaluation of Plaintiff's TPD application based upon the Department's regulations

governing TPD eligibility. A copy of this letter was also sent to Plaintiff's student loan servicer, Sloan Servicing. A copy of the letter is attached hereto, marked as Exhibit E.

24. Having received no response to the November 25, 2024 letter, Plaintiff's attorney and her Applicant Representative called the Total and Permanent Disability Division of Nelnet on January 2, 2025.

25. During the above telephone conversation, the Nelnet representative reviewed the documents submitted with Plaintiff's application. The Nelnet representative stated that:

   a. it appeared the Department had received all the documents needed to make a decision on Plaintiff's application including a Benefits Planning Query ("BPQY") letter from the SSA;

   b. that the application and supporting documents had been forwarded to the Financial Aid Department; and

   c. that it could take the Financial Aid Department 30 to 120 days to make a decision on the application.

26. In a letter dated January 27, 2025, Plaintiff received a second denial of her TPD application from the Department. This letter was identical to the first denial letter asserting that Plaintiff did not provide a copy of her SSA notice of award for Social SSDI or SSI benefits stating that her next scheduled disability will be no less than three years. A copy of the denial letter is attached hereto, marked as Exhibit F.

27. On January 29, 2025, Sloan Servicing sent Plaintiff a letter informing her that her forbearance would be ending soon and that her next student loan payments would be due on March 28, 2025. A copy of the letter is attached hereto, marked as Exhibit G.

28. On January 30, 2025, Sloan Servicing sent another letter to Plaintiff outlining her student loan balances and payment information. A copy of the letter is attached hereto, marked as Exhibit H.

29. On February 6, 2025, Sloan Servicing sent Plaintiff a statement showing the payment amounts due on her loans beginning on March 28, 2025. A copy of the letter is attached hereto, marked as Exhibit I.

30. On March 4, 2025, Plaintiff's Applicant Representative, Ms. Lubken, called the Total and Permanent Disability Division of Nelnet. She asked for an explanation regarding the Department's denial letter of January 27, 2025. Ms. Lubken also explained to the Nelnet representative that when she called on January 2, 2025, she was informed that it appeared the Department had received all the documents needed to make a decision on Plaintiff's application. Plaintiff's representative expressed to the Nelnet representative Plaintiff's confusion as to why her application was denied given that it erroneously stated that additional documentation was required when she had been told the Department had received all the documents needed to make a decision on Plaintiff's application.

31. The Nelnet representative indicated that when Plaintiff's application was reviewed, it appeared she was on a 2-year review cycle and that the SSA anticipated improvement in her medical condition. Ms. Lubken stated to the representative that the BPQY provided to the Department by the SSA indicated Plaintiff was on a 3+ year review. Additionally, the SSA Notice of Award included with Plaintiff's TPD application indicated Plaintiff's eligibility for disability would be reviewed in 4+ years. None of the documents submitted to the Department indicate a 2-year review cycle by SSA.

The representative stated that it was possible too many documents had been submitted with the application and perhaps the TPD application reviewer had not seen and/or reviewed the BPQY. The representative suggested submitting only the BPQY again to the Department.

32. The Netnet representative also informed Ms. Lubken that Nelnet would no longer be processing TPD applications as they were in the process of transferring all TPD application documentation to a different division of the Department for processing. She indicated it would probably be the spring of 2025 before the new TPD processor information became available to the public.

33. On March 10, 2025, Plaintiff electronically submitted to Sloan Servicing a request for a General Forbearance and received confirmation of the uploaded submission. A copy of the General Forbearance Request and Confirmation are attached hereto, marked as Exhibit J.

34. On March 13, 2025, Plaintiff's attorney sent a second letter to the Department and included the SSA BPQY letter, dated November 15, 2024, that Plaintiff received from the SSA indicating that Plaintiff's medical review cycle was classified as "3+ years." The letter requested the Department re-evaluate and approve Plaintiff's TPD application. A copy of this letter was also sent to Sloan Servicing and is attached hereto, marked as Exhibit K.

35. Neither Plaintiff nor her attorney received a decision from the Department regarding Plaintiff's TPD application; however, on April 27, 2025, Plaintiff received an email from Sloan Servicing informing her that her student loan payments were 30 days past

due. Attached hereto, marked as Exhibit L, is a copy of the email Plaintiff received from Sloan Servicing.

36. On May 11, 2025, Plaintiff reviewed her loan status on the studentaid.gov website. It indicated that as of January 27, 2025, her TPD application had been closed. Attached hereto, marked as Exhibit M, is a copy of Plaintiff's Application Information from the studentaid.gov website.

37. On May 14, 2025, Plaintiff called Sloan Servicing inquiring about her request for forbearance. She was informed by a Sloan Servicing representative that her forbearance request had been received but for an unknown reason had not been approved or denied. The representative told Plaintiff that the request would be approved, the forbearance granted, her loans would be removed from default status, and her next payments would not be due until June 22, 2026.

38. On May 29, 2025, Plaintiff's attorney sent a third letter to the Department by certified mail, return receipt requested. This letter, a copy of which is attached hereto, marked as Exhibit N, included the following:

  a. An Applicant Representative Designation: Total and Permanent Disability for attorney Kevin Ruser;

  b. A copy of the letter sent to the Department from Kevin Ruser dated November 25, 2024;

  c. A copy of Plaintiff's General Forbearance Request to Sloan Servicing and confirmation of successful upload of Plaintiff's General Forbearance Request;

  d. A copy of the letter sent to the Department of Education from Kevin Ruser dated March 13, 2025;

e. A request that the Department consider all the evidence submitted by Plaintiff;

f. A request that if the Department determined that denial of Plaintiff's application was still appropriate, the Department provide Plaintiff with a notice complying with due process, including specific explanation(s) as to why Plaintiff's application was being denied;

g. A request that all future communication regarding Plaintiff's TPD application be directed to Plaintiff's attorney, Kevin Ruser; and

h. A communication advising the Department that a complaint for declaratory judgment (draft enclosed) would be filed against the Department if no response was received from the Department within 90 days.

39. According to the tracking information contained on the U.S. Postal Service website, the above letter to the Department was delivered to the Department on July 16, 2025. Attached hereto, marked as Exhibit O, is a copy of the U.S. Postal Service website Tracking Information.

40. On July 21, 2025, Sloan Servicing sent Plaintiff a letter informing her that her request for a General Forbearance had been denied. A copy of the letter is attached hereto, marked as Exhibit P.

41. On August 24, 2025, Plaintiff logged into her studentaid.gov account to check on the status of her student loans. The only activity appearing at that time and currently appearing on the account are two filings of Plaintiff's Applicant Representative Form and Plaintiff's Total and Permanent Disability Application with a closure date of January 27, 2025.

42. On August 25, 2025, Plaintiff's Applicant Representative, Ms. Lubken, called the Total and Permanent Disability Division of the Department asking about the status of Plaintiff's application. She was informed by the representative as follows:

    a. Nelnet closed Plaintiff's case but did not indicate why the application was denied and closed;

    b. Because there was no record explaining why Plaintiff's application was denied, the Department would reopen the application for reconsideration and Plaintiff's student loan payments would be deferred for 90 days, or until December 22, 2025;

    c. The studentaid.gov website would now show that Plaintiff's application was in reconsideration status; and

    d. Plaintiff and her representative would be sent a letter explaining that the application was in reconsideration status and that her loans were in forbearance.

43. On August 25, 2025, Plaintiff received an email with a letter from the Department indicating that it had received her request that her TPD application be reconsidered. The letter stated that Plaintiff must provide supporting documentation by January 27, 2026, so the Department could review her reconsideration request. It also stated that if Plaintiff did not provide the supporting documentation by the above date, the Department would close the record and Plaintiff would have to submit a new TPD application. A copy of the letter is attached, marked as Exhibit Q.

44. On August 26, 2025, Plaintiff and her Applicant Representative called the Total and Permanent Disability Division of the Department to ask again what additional supporting documentation the Department needed. Their call was transferred to a representative in the Department who said Plaintiff needed to provide the following:

    a. Verification that Plaintiff's case had been reviewed within 5 to 7 years from her notice of award;

    b. A copy of Plaintiff's BPQY showing that she has a review cycle of 3 years or more **(**this document had already been provided by Plaintiff and the SSA**)**;

    c. A document from SSA indicating Plaintiff is still disabled and receiving benefits; and

    d. A new application for TPD because Plaintiff's application had been closed January 27, 2025, and could not be reopened (despite the fact that the letter Plaintiff received on August 25 indicated her application would be reopened).

45. On or about August 26, 2025, Plaintiff received a letter dated August 21, 2025, from Federal Student Aid Division at the Department. A copy of the letter is attached, including all the documents returned with the letter, marked as Exhibit R. The letter states the Department was unable to process the "enclosed item" because "Not enough Personally Identifiable Information (PII) was provided, e.g. Full Name, Date of Birth, SSN." Upon review of the documents that were returned with the Department's letter, this is an inaccurate statement. Many of the documents returned contain Plaintiff's name, Social Security Number, and her student loan identification number.

46. Plaintiff has been determined disabled by the SSA since September 15, 2017, and continues to receive disability benefits. Attached hereto and marked as Exhibit S, is Plaintiff's SSA Benefit Verification Letter, dated September 14, 2025.

47. On September 14, 2025, Plaintiff electronically submitted to Sloan Servicing another request for a General Forbearance and received confirmation of the uploaded

submission. A copy of the General Forbearance Request and Confirmation are attached hereto, marked as Exhibit T.

48. On September 16, 2025, Sloan Servicing sent Plaintiff a letter informing her that her request for a General Forbearance had once again been denied. A copy of the letter and an email from Sloan Services is attached hereto, marked as Exhibit U.

49. Plaintiff suffers from a number of psychological disorders including Bipolar Disorder, Schizophrenic Affective Disorder, Post Traumatic Stress Disorder, Anxiety, and Depression, in addition to a number of physical illnesses. The denial of her student loan discharge application and receiving numerous letters, phone calls, and statements from Sloan Servicing causes her a great deal of additional stress and exacerbates her mental health issues.

50. The Department has arbitrarily and capriciously denied Plaintiff's application, failing properly to consider material evidence that supports Plaintiff's eligibility for TPD discharge of her FFEL student loans.

## CLAIM FOR RELIEF

(Administrative Procedure Act – 5 U.S.C. § 706)

51. Plaintiff realleges and incorporates by reference all prior paragraphs.

52. Under § 706(a) of the Administrative Procedure Act, a final agency action can be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; . . . [or] without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C)-(D).

53. The Department's denial and closing of Plaintiff's TPD application constitutes final agency action subject to judicial review under the Administrative Procedure Act.

54. The Department acted arbitrarily, capriciously, and not in accordance with law in violation of 5 U.S.C. § 706(2)(A) by:

    a. Failing appropriately to consider the SSA evidence submitted by Plaintiff;

    b. Failing to articulate on what basis Plaintiff was not eligible for total and permanent discharge of her student loans;

    c. Disregarding the express language of 34 C.F.R. § 682.402(c)(2)(iv), which permits discharge of student loans based on an established onset date for SSDI of at least 5 years prior to the application for a disability discharge;

    d. Failing to find that Plaintiff, having been found disabled more than 5 years ago and currently determined disabled by the SSA, meets the qualifications for TPD based upon its own regulations; and

    e. Failing to provide a reasonable explanation for rejecting the SSA's evidence of TPD application.

55. Plaintiff has suffered harm from the Department's wrongful denial, including continued obligation to repay student loan debt and accumulation of interest thereon despite clear eligibility for discharge.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Assume jurisdiction over this matter;

B. Declare that the Department's denial of Plaintiff's TPD discharge was arbitrary, capricious, and not in accordance with law;

C. Vacate the denial and remand the matter to the Department with instructions to approve Plaintiff's TPD discharge application;

D. Require the Department to direct its servicing agent to cease collection activities on Plaintiff's FFEL loans during the pendency of this action and upon final judgment;

E. Award Plaintiff attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, if applicable; and

F. Grant such other and further relief as the Court deems just and proper.

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this Complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the Complaint otherwise complies with the requirements of Rule 11.

DATED this 11th day of November, 2025.

AMANDA KAY KOEBER, Plaintiff

BY: /s/Kevin Ruser
Kevin Ruser, #16034
Attorney for Plaintiff
CLINICAL LAW PROGRAMS
University of Nebraska College of Law
P.O. Box 830902
Lincoln, NE 68583-0902
Telephone: (402) 472-3271
Fax: (402) 472-3228
kruser1@unl.edu